### BASS *v.* GOBERT, executrix.

1. Books of account of others than those doing a regular business and keeping daily entries thereof, who are not merchants, shopkeepers, physicians, or blacksmiths, are not admissible in evidence to prove an account. 4

2. Except in justice's courts a party can not prove his account by his ex parte affidavit ; and in the trial of an action brought to recover a judgment on an open account in the superior court, a bill of particulars thus sworn to is inadmissible in evidence.

3. The question of the solvency of an estate and the existence of debts of a higher dignity is material, when, to a suit instituted by an executrix on a promissory note payable to her intestate, the defendant pleads as a set-off an open account larger in amount than the plaintiff's demand, and prays judgment for the excess against the executrix.

4. There having been no legal evidence submitted which would authorize a verdict establishing any part of the set-off which was pleaded, and the debt on which the suit was founded not being contested by the defendant, there was no error in directing a verdict for the plaintiff.

Submitted March 2, — Decided April 27, 1901.

Complaint.    Before Judge Reese.    Hancock superior court. April 14, 1900.

*R. H. Lewis,* for plaintiff in error.    *Allen & Pottle,* contra.

LITTLE, J.    Mrs. Gobert as executrix of the will of Margaret M. Bass instituted an action against W. A. Bass, to recover a judgment on a promissory note for $565 principal, dated January 9, 1896, and due one day after date, having two credits thereon, one January 9, 1897, of $65.04, and the other January 9, 1898, of $55.30.    Defendant denied indebtedness, and, in the nature of a set-off, pleaded that testatrix was, at the time of her death, indebted to him in the sum of $761.63, besides interest, on an open account, and prayed judgment for the excess in the amount of his account over his debt to the plaintiff.    He attached a bill of particulars to his plea, containing fifteen items of " cash," these items varying in

amount. Besides one or two other items of small value, the account contained four items of board against Mrs. Bass, deceased; one due December 31, 1895, for $120, another October 31, 1896, for $120, another December 31, 1897, for $120, each of these being for one year's board; and also one other item due November 2, 1898, for ten month's board, $100. The others were items for cash paid sundry persons, and for hire of a horse and buggy, etc. The plaintiff tendered the note in evidence, and closed. The defendant introduced the executrix, who testified that her testatrix was the stepmother of the defendant, that she retained a room at her stepson's house, and furnished the same, and that the defendant furnished her, when she was at his house. Board in the country was worth from $6 to $10 per month. Testatrix spent part of her time at the home of her stepdaughter, part at her sister's, part at the home of witness, and part at that of defendant. She died at the house of witness. She was considerably advanced in years, but went about a good deal amongst her people. She did not spend as much as six months (in a year) at the house of defendant, and was never away from the house of witness longer than three months. While at the home of defendant she occupied, in the opinion of witness, the relation of mother. She did not know that defendant had ever demanded any board from testatrix, and had never heard of the account until about three months before. Testatrix performed services in the household of defendant. Witness had a conversation with defendant a short time after the death of testatrix, and he told her that he had no money to pay the note. He did not at that time mention the account and board bill. Witness thought that the service which testatrix rendered in the family of defendant was reasonably worth her board. The amount represented by the note was Mrs. Bass's interest in her husband Milton Bass's estate, which defendant borrowed, and gave her a mortgage and note to secure her. The note sued on was a renewal. Sometime after the death of the testatrix, who was an aunt of witness, defendant told her that testatrix was in debt to him, or owed him, or was some expense to him. Witness then testified that the estate was insolvent, and went into details in reference to the same. Another witness testified that he had had transactions with defendant, in that the latter had ginned a good deal of cotton for him, and that he always found defendant's books correct. The defendant himself testified that he

went to the executrix for a settlement, and told her that his mother
had received value and he owed her nothing; that executrix re-
fused to allow a credit on the note; that the paper the executrix
had was a memorandum stating that he would settle rather than go
into court. ·Defendant offered his books of original entry, and
testified that in the statement was one item of $100 paid Bass
Brown, but he had never paid it, but would settle with him for
what his mother had willed him.    It was just a memorandum.    An-
other witness testified that he occasionally saw the testatrix at the
house of defendant; and another that testatrix considered her home
at the house of defendant for four years prior to her death.    Wit-
ness had seen her there.    Her board was worth from $8 to $10 per
month.    The defendant, being recalled, testified that he kept his
own books, that he did not have a clerk, and that the book pro-
duced was the one in which he kept accounts against his mother,
against all his hands, and anybody that owed him.    The entries
were in his handwriting.    Testatrix rendered his family no service
at all, and her home was at his house.    The original account book
of W. A. Bass, the defendant, was then offered in evidence, and the
court refused to allow it admitted. · After the evidence was con-
cluded the court directed a verdict for the plaintiff, and judgment
followed accordingly.    The defendant made a motion for a new
trial, on several grounds, which was overruled.

1. It is claimed that the court erred in excluding from the jury
the book of original accounts presented by the defendant, when offered
as proof of his account.    Section 5182 of the Civil Code prescribes that
books of account of any merchant, shopkeeper, physician, blacksmith,
or other person doing a regular business and keeping daily entries
thereof may be admitted in evidence as proof of accounts contained
therein, upon certain named conditions; and it is our understand-
ing that the law of this State does not authorize the books of any
other person to be admitted in evidence, even though the conditions
named be complied with.    The only ground for the admission of
this character of evidence is because there is no better evidence ac-
cessible to the party offering the books.    *Slade* v. *Nelson*, 20 *Ga.*
365.    In the case of *Ganahl* v. *Shore*, 24 *Ga.* 23, Judge Lumpkin,
in delivering the opinion of this court, said: "We hold that any
occupation that makes it necessary for books to be kept as the rec-
ord of its transactions — the monuments of its daily business, as fac-

tories, foundries, forges, glass-works, banks, factorage, no matter what, if books are required, ex necessitate rei, to be kept, these books are to be let in under the law." We know of no construction of the section of the code above recited which enlarges the rule as to the admission of books of account as evidence. It seems to be a condition precedent to the admission of such books that the person offering them should be engaged in a regular business and keeping daily entries of the same, of which business the books are the records. Tested by this rule, the books offered by the defendant in this case were not admissible. He was neither a merchant, shop-keeper, physician, blacksmith, nor other person engaged in a regular business, so far as the record shows. Not being such, his books of account would not have been admissible as evidence, even had the conditions of admission prescribed by the code been complied with, and the record fails to disclose that they were.

2. It is further complained that the court erred in rejecting the sworn itemized account of the defendant, when offered in evidence. We know of no general law which allows a party to introduce his account in evidence and prove the correctness of the same by his ex parte affidavit attached thereto, though it is allowed in justice's courts under special circumstances by statute. *Fleming* v. *Shepherd*, 83 *Ga.* 338.

3. It is further complained that the court allowed evidence to be admitted in reference to the insolvency of the estate of testatrix. We find no error in this ruling. The defendant pleaded a set-off against the claim of the plaintiff, and asked a judgment for the excess of his demand against the executrix. So far as concerned the set off to the extent of plaintiff's claim against him, it was immaterial whether the estate of the testatrix was solvent or insolvent; but it became material to the executrix that the fact of insolvency should be made to appear, if such was the case, in determining the character of the judgment which should be rendered against her for the excess, in the event that defendant should succeed in establishing the correctness of his set-off. It was ruled in *Ray* v. *Dennis*, 5 *Ga.* 357, that where the defendant pleads set-off against an administrator for a larger amount than his intestate's demand, the plaintiff may reply by proving that his intestate's estate is insolvent, and that there are outstanding debts of higher dignity than those set off, sufficient to exhaust the assets in his hands, for the

purpose of protecting the administrator from an absolute judgment under the statute. It must, therefore, be ruled that there was no error in admitting this evidence.

4. There was no error committed by the court in ruling out evidence to the effect that the defendant had paid for the burial case and funeral expenses of the deceased. These items were not included in the account set off against plaintiff's demand, as we understand the evidence, and the fact that he had paid these would not entitle him to any judgment in this suit. Such payments, of course, constitute debts of a high dignity, which the defendant would be entitled to recover from the estate if the assets were sufficient to pay them and such additional debts as the law declares to be of higher or equal dignity. This brings us to the only additional question raised by the motion for a new trial, which is, that the court erred in directing a verdict for the plaintiff. Such direction was, of course, illegal, unless it was demanded by the evidence. While there is in law no obligation on the part of a stepson to maintain and support his stepmother, the defendant did not establish a legal claim against the estate of the deceased, for the items named in his bill of particulars, or any of them. If there was any agreement, either express or implied, that she should pay board, and she had not paid, then he would have been entitled to recover on proper proof of the time she boarded at his house, and proof of the value of such board; but if the fact of her presence in his home for a considerable period of time raised the implication that she was so indebted, the evidence offered by the defendant entirely failed to show any specific amount which he was entitled to recover in the nature of a set-off. Proof by the defendant and others that Mrs. Bass considered her home at his house for four years prior to her death would not, in view of the other evidence introduced, authorize a recovery by him for her board for any given length of time. Mrs. Gobert, who was called as a witness for the defendant, said on this subject that Mrs. Bass, the testatrix, had a room at W. A. Bass's house; that she did not spend all her time there; that she divided her time pretty well between her relatives; that she could not say what her board at defendant's house would be worth per year or per month; that the deceased did not spend as much as six months at Mr. Bass's at a time; and that she was never away from witness's house "longer than three months." Assuming that all this evidence is

true, that testatrix made her home for the last four years of her life at defendant's house, but that she divided her time between a number of people and never remained at his house for six months at a time, and that board at his house was reasonably worth $8 per month, the fact still remains that, without more definite evidence as to the time for which the board should be computed, the jury could not legally have found any given amount to which the defendant would be entitled. They could not, under the evidence, have determined the length of time in any year for which she was properly chargeable with board by defendant. It can not, therefore, be said that the defendant by the evidence established any valid and subsisting demand against the estate of the testatrix; and this must have been done before he was entitled to recover. The trial judge, therefore, did not err in directing a verdict for the plaintiff for the amount of the note on which suit was instituted, as this was uncontested.

*Judgment affirmed. All the Justices concurring.*