23937. EATONTON OIL & AUTO COMPANY *v.* GREENE COUNTY *et al.*

146

Decided March 14, 1936. Rehearing denied March 31, 1936.

*Miles W. Lewis, R. C. Jenkins,* for plaintiff.

*Noel P. Park, J. G. Faust,* for defendant.

Stephens, J. Eatonton Oil and Auto Company brought suit against Greene County to recover for the cost of gas, oil, etc., which the plaintiff had furnished to R. S. Taylor Incorporated, and which went into the construction of a road which R. S. Taylor Incorporated was building under a contract with Greene County and Oconee County. The plaintiff brought the suit in three counts as will hereinafter be more particularly set out. The undisputed facts were about as follows: Greene County made a contract with the State Highway Board for the construction of a road designated as Project 228-A on Route No. 15. One of its terms required the county to work twenty convicts (with two guards) on the proposed road. The county then contracted with R. S. Taylor Incorporated to do certain excavating, clearing and grubbing, top-soiling and concrete work, according to the plans and specifications of the highway board and under their direction. Taylor further agreed to employ in the work, on every day that work was done, twenty convicts and two guards, each convict to be paid at the rate of $1.50 per day and each guard at the rate of $2.50 per day; and to furnish a surety bond conditioned on compliance with the terms of the contract, etc., "which bond shall be construed to be a compliance with the acts of the legislature approved August 19th, 1916," and that the county should have the option to pay each estimate of work done (made by the highway board) on the first of each following month, at a discount of eight per cent.; and that the county should have the option to furnish money to meet pay rolls, pay for material, etc., before estimates were made, such sums to be deducted

from the amount due on such estimate "before any other payment either to second party or its order is made." For some reason the Taylor Company was unable to give the bond required. Notwithstanding this, the county permitted it to go ahead with the work and cooperated by furnishing the convicts, making advances, paying orders, etc. Taylor Company bought from Eatonton Oil and Auto Company large quantities of gasoline, oil, kerosene, and other materials which were used for the operation of the machinery employed in the work. The account for these materials amounted to $3553.96 from October 7, to December 28, 1931. On January 14, 1932, the Eatonton Company presented an order to the county from the Taylor Company requesting payment to the Eatonton Company of $3553.96 out of payments when and as due to the Taylor Company according to estimates of the State Highway Department, "this order subject to such other orders as may have been accepted for payment by you," etc. This order was accepted by the county in the following terms: "accepted and payment promised according to the terms and conditions of said order, upon the express condition that payment is to be made only from such amounts as may be due the signers of said order under the terms of employment between such signers and this county, and at such times as payment may be due under such terms; this writing making no original undertaking as to any payment, and not being so construed; and no liability hereunder is intended other than to make payments to the said grantee in the above order, if, when, and as such may be due the signers above; and provided expressly, further, that this acceptance is subject to all such orders and acceptances of prior date hereto, and to repayments to Greene County for all advances of money and supplies made to R. S. Taylor Inc., or which may be made from time to time in pursuance with the agreement between R. S. Taylor Inc. and this county, and subject to any other claims which may have precedence by law."

After this the Eatonton Company continued to supply gasoline, etc., to the Taylor Company. On February 1, 1932, Eatonton Company solicited of the county a part payment on the order of January 14. After considerable discussion between the parties in which some question was raised as to the liability of the county, the county paid $1800 to the Eatonton Company upon receiving from it a paper acknowledging payment of the $1800 as a credit on the

order of January 14, and as an advance to R. S. Taylor Inc. and continuing: "The undersigned freely admits and here states that it has no claim or demand for any amount due by R. S. Taylor Inc., for gas and oil used on the Watson Springs project, other than as set out in the said order; and does hereby in consideration of said payment and the advantages received therefrom, and of $1 further paid; and of the acceptance by said county of said order, expressly relieve and release said Greene County, and the Board of Roads and Revenues thereof, from any and all claim, debt, or liability of any sort other than as represented by said order, and does not hold said county or said board in any way responsible for the debts of said R. S. Taylor Inc., other than as stated. It is further agreed, in consideration of said payments made, that if any retention payments (held up under estimates and to be later paid Taylor Inc.) pass under any prior orders, such is satisfactory to the undersigned, all orders to speak for themselves."

The Eatonton Company continued to supply gasoline, etc., to the Taylor Company until March 23, 1932, when the total amounted to $5433.81. The Eatonton Company rendered a bill to the county, payment of which was refused, and suit was brought against the county and the county commissioners. The petition was in three counts, the first being predicated on the acceptance of January 14, 1932, on which it was alleged a balance of $1753.96 was due, after crediting the $1800 paid the plaintiff on February 1. The second count sought recovery of this $1753.96 on the ground of the liability under the act of August 19, 1916 (Ga. L. 1916, p. 94, Code of 1933, § 23-1705 et seq.) imposed on any county or other public body which contracts for a public work without taking bond from the contractor. The third count, based on the same statutory liability, alleged that $1879.85 worth of gasoline, etc., was supplied to the Taylor Company between January 1, and March 23, 1932, of which an amount worth $939.92 was used in an Oconee County project, leaving a balance due the plaintiff of $939.93. This count was amended, allegedly to correct an error, so as to claim that the amount of gasoline diverted to Oconee County was $474.42, whereby the amount due the plaintiff under this count was $1405.43. A further amendment of counts 2 and 3 claimed that the $474.42 collected by the plaintiff from Oconee County, if not allowed as a credit to Greene County against the account sued for in count 3,

should be credited pro rata against the accounts sued on in counts 2 and 3.

The county answered count 1, admitting that bond was not given by the contractor, admitting acceptance of the order of January 14th, denying that any sum was due thereunder to the plaintiff, and setting up the receipt of February 1, as a complete release from liability of any sort on account of materials furnished by the plaintiff to the contractor except such sums as might be due under the original order; alleging that no amount had become due under such order, and denying that gas and oil were such materials as the county would be liable for by reason of failing to take bond from the contractor. Counts 2 and 3 of the petition were answered in substantially the same terms as count 1, with the additional claim that the order and acceptance of January 14, constituted a special contract by which the plaintiff waived the failure of the county to take bond from the contractor.

The case was referred to an auditor, who found $1278.86 for the plaintiff, arriving at this result by disallowing all of the account for gasoline, etc., except what was embraced in the order of January 14 ($3553.96), from which he deducted the $1800 paid by Greene County on February 1st and the $474.42 paid by Oconee County. The defendant county introduced an account of sums paid to or on behalf of the Taylor Company which nearly exhausted the contract price for the work, the balance due being $78.95. The auditor allowed this account, except the items for convict hire totaling $3145 which he held to be illegal. The parties filed numerous exceptions to the auditor's findings. The plaintiff, on various grounds, moved also to dismiss the defendant's exceptions. On the hearing of this motion the court allowed the defendants to amend their exceptions and overruled the motion to dismiss. When the exceptions of fact came up for trial the court having previously ruled on the exceptions of law, directed the jury to find a verdict for $78.95 in favor of the plaintiff. A motion for new trial was overruled, and the plaintiff excepted, assigning error on that ruling, on the rulings excepted to pendente lite, and on the overruling of various exceptions to the auditor's report.

The paper of February 1, was claimed by the plaintiff to be a mere receipt for $1800 as a part payment on the liability that the county had already incurred, and therefore that this paper was not

binding as a contract because it was without consideration. This court certified to the Supreme Court a question, the main purport of which was whether the plaintiff could treat the "contract" of February 1, as void and recover on the liability of the county imposed by the act of 1916. The terms of the question as understood by the Supreme Court were such as to ask instruction only on the contention of the plaintiff that the writing was not a contract because it was without consideration. The Supreme Court limited its ruling to the precise terms of the certified question. The court used this language: "The question as framed is answered in the negative;" and also observed: "The question propounded by the Court of Appeals involves no inquiry as to whether the release agreement should be recorded in order to be enforceable against the materialman," etc. This matter of non-record and other questions discussed in the briefs, being expressly excluded from consideration, the answer to the certified question must be understood as ruling that under the facts stated in the question and the ordinary principles of contract law, the writing of February 1, was a contract of compromise between the parties and was supported by a valuable consideration. The order of January 14, is expressly referred to and made a part of the receipt of February 1. The two papers thus became one contract. The first one does not purport to release any part of the county's liability and the acceptance therein does not admit any liability of the county except for making payments in a specified manner. In the February 1 paper there is a broad release from liability except as to the balance of the amount of the January 14 order. The question of the liability of the county as made in the record covers three periods: (1) From the beginning of the work to December 28, 1931; (2) from January 1, to February 1, 1932; and (3) from February 1 to the end.

■ The order or draft of January 14, was for the amount of materials furnished up to January 1. The defense against this part of the account rested wholly on the allegation that the county had paid out the entire contract price on debts of the Taylor Company which were entitled to payment ahead of the plaintiff's claim, under the contracts of the county with the Taylor Company and with the plaintiff. The acceptance by the commissioners of Greene County of the order of January 14, contained a proviso "that this

acceptance is subject to all such orders and acceptances of prior date hereto, and to repayments to Greene County for all advances of money and supplies made to R. S. Taylor Inc., or which may be made from time to time in pursuance with the agreement between R. S. Taylor Inc., and this county, and subject to any other claims which may have precedence by law." The agreement referred to contained this clause: "In event, in order to expedite work first party should at its option furnish money to second party to meet pay rolls, pay for material, etc., used in carrying out of this contract, when such sums may be required by second party before any estimates are made and payment therefor under the discount plan above provided for made,—it is distinctly herein agreed that such sums, after the estimates have been discounted, shall be deducted from the amount due on such estimate to second party before any other payment either to second party or its order is made." In order to show that the payments by the county to or for the Taylor Company had exhausted the contract price for the work, the defendants introduced, apparently without objection, "the book of account of the defendants with the contractor, as follows" etc. Looking at the account, a large number of items do not appear to come within the terms of the acceptance of the plaintiff's order of January 14, and the contract of the Taylor Company with the county. Besides, it was necessary for the defendants to show the amount which the contractor earned. The contract was not for any specific sum, but provided that different kinds of work should be paid for at specified prices according to quantity, for example, clearing and grubbing $60 per acre, concrete work $16.50 per cubic yard, etc. While the account purported to give the items for which the contractor was entitled to credit there was no evidence that any part of the account was correct. It was not shown who kept it; nobody explained it. The finding of the auditor and the verdict directed by the court, as to this portion of the plaintiff's account, rested solely on this ex parte, unverified statement of disbursements by the county and credits due the contractor. If this book had been objected to, it should have been excluded. It was not admissible on any theory. Code 1933, § 38-310, states what account books are admissible and requires, even as to these, certain preliminary proof. See *Blanchard* v. *Johnson,* 142 *Ga.* 447 (83 S. E. 104).

A verdict can be upheld which rests on secondary evidence that

was introduced without objection. *Munroe* v. *Baldwin,* 145 *Ga.* 215 (88 S. E. 947). On the other hand a verdict resting on evidence that has no probative value must be set aside, although the evidence was not objected to. This has been held most frequently with reference to hearsay testimony, but the principle is not restricted to hearsay. *Eastlick* v. *Southern Railway Co.,* 116 *Ga.* 48 (42 S. E. 499) ; *Jones* v. *State,* 50 *Ga. App.* 97 (176 S. E. 896) ; *Suttles* v. *Sewell,* 117 *Ga.* 214 (43 S. E. 486) ; *Miller* v. *Mc-Kenzie,* 126 *Ga.* 746 (55 S. E. 952) ; *Hale* v. *Hale,* 28 *Ga. App.* 509 (111 S. E. 740) ; *Summerour* v. *Fortson,* 174 *Ga.* 862 (164 S. E. 809) ; *McSwain* v. *Estroff,* 34 *Ga. App.* 183 (129 S. E. 16) ; *Klimax* v. *Converse,* 39 *Ga. App.* 742, 748 (148 S. E. 349) ; *Slater* v. *State,* 44 *Ga. App.* 295 (161 S. E. 271). The account was at best a mere memorandum. It was no better than hearsay. The defendants failed to prove their defense against this part of the plaintiff's account, and it was error to direct a verdict for the defendants and error to overrule the second ground of the motion for new trial which alleges that the verdict was unauthorized by the evidence.

■  For the part of the plaintiff's account which accrued between January 1, and February 1, recovery by the plaintiff is clearly barred by the agreement of February 1. It was argued in the briefs that the release of February 1, was not entered on the minutes of the county board and therefore never became a binding contract, under the decisions in *Jones* v. *Bank of Cumming,* 131 *Ga.* 614 (63 S. E. 36) ; *Weathers* v. *Easterling,* 153 *Ga.* 601 (113 S. E. 152) ; *Murray County* v. *Pickering,* 42 *Ga. App.* 739 (157 S. E. 343). But this question does not appear to have been raised in the court below, and will not now be considered. *Early County* v. *Fielder,* 4 *Ga. App.* 268 (63 S. E. 353) ; *Hall County* v. *Smith,* 178 *Ga.* 212 (5) (172 S. E. 645).

■  Regarding the portion of the plaintiff's account which accrued after February 1, the defendants contend that there can be no recovery, because the agreement of that date provided against liability of the county for materials furnished thereafter. There is no such agreement in the writing, and only by a very forced construction can the meaning be made to include possible future liability. The terms of the writing refer to present and past liability; it is not ambiguous, and certain testimony as to conversa-

tions before it was signed can not be considered as it is not allowable to vary the writing by parol, and prior negotiations are merged therein.

Furthermore, the county could not relieve itself of its statutory liability by notice to the materialman that it would not be liable to him for materials furnished to the contractor. Nor would such notice estop the materialman from asserting his right. *Board of Education* v. *United Supply Co.*, 34 *Ga. App.* 581 (131 S. E. 292). Estoppel to be relied on must be pleaded. *Irvine* v. *Wiley*, 145 *Ga.* 867 (3) (90 S. E. 69). No estoppel was pleaded in this case. The court erred in overruling the plaintiff's 8th exception of law to the auditor's ruling that the paper of February 1, released the county from liability for materials furnished after that date.

■ The judge of the superior court held that the taking of the order of January 14, followed by the payment and the paper of February 1, constituted a waiver by the plaintiff of his rights under the statute. This view is not sound. The act of 1916 as pointed out by the Supreme Court, does not make the county liable in any event, but only for the ultimate loss sustained by the materialman. Although the contract between the county and the contractor is declared to be invalid for any purpose, a relation arises in which the materialman must get his pay from the contractor if he can, and failing therein, he can go on the county for it. Consequently there is no inconsistency, no waiver and no exercise of an election, in the materialman trying to get or getting his payment out of funds due by the county to the contractor before they are paid to the latter. Such an effort is in the interest of the county as well as of the materialman, because it gives notice to the county and an opportunity to protect itself against paying twice for the same material.

■ It remains to notice the rulings of the court on the exceptions of law to the auditor's report. (a) There are a number of exceptions by the plaintiff to the action of the auditor in admitting testimony. These objections can not be considered because the auditor's report does not show what objections were urged against the admission of the testimony, nor does the report of the auditor show what the testimony was. The pages of the brief of evidence referred to by the auditor do not correspond in number with the pages in the record. It is true that counsel for the plaintiff in

error has endeavored to overcome these defects by stating fully in his exceptions what the evidence was and what the objections to it were. But there is no verification by the auditor of these allegations. Code of 1933, § 10-302, provides "Exceptions as to any matter not appearing on the face of the record or brief of evidence, or in the report itself, shall be certified to be true by the auditor within 40 days after the report is filed," etc. This applies to the plaintiff's exceptions of law numbered 3, 6, 7 and 15. (b) The plaintiff's 9th exception of law questions the finding of the auditor that the plaintiff's order of January 14, was subject to the orders of Bickers-Goodwin Company and Greene County Motor Company. The plaintiff's order says: "This order subject to such other orders as may have been accepted for payment by you," and the county's acceptance says: "This acceptance is subject to all such orders and acceptances of prior date hereto," etc. The orders of Bickers-Goodwin Company and Greene County Motor Company were prior in date to the plaintiff's order. And the auditor found that the plaintiff had knowledge of those orders before obtaining acceptance of its order. Those orders were attacked by the plaintiff on the ground that they had not been entered on the minutes of the county board. Pending the litigation the county board passed orders nunc pro tunc putting these orders on the minutes. The plaintiff claims that this action was void. All this is clearly immaterial because the orders were not binding on the county as the commissioners had no power to bind the county by accepting orders or drafts drawn against funds due by the county to the contractor. *Jones* v. *Bank of Cumming,* supra. These orders could not be made binding by entry on the minutes of the county board. *Weathers* v. *Easterling,* supra. Another objection to those orders was that they were held by companies in which county commissioners were stockholders, and that, under Code 1933, §§ 23-1713, 23-1714, they were void. H. D. Goodwin was a stockholder in Bickers-Goodwin Company and chairman of the county commissioners, and the Greene County Motor Company order was put up as collateral security for a note given by it to a bank of which another county commissioner was president. The code sections cited do not apply to the Bickers-Goodwin Company order because the purchases from this company were not made by a county officer, but by the contractor. The code sections do not apply to the Greene County

Motor Company order because there was no purchase from a store or otherwise. It was not error to overrule this exception. The plaintiff's 10th exception of law raises the question as to the proper way of deducting from his account the amount which he collected from Oconee County. The auditor deducted the total amount of $474.42 from the amount which he found in favor of the plaintiff. As a large part of the diverted gasoline was diverted after January 1, and the auditor allowed no recovery for any of the items in the plaintiff's account of date after January 1, the dates of the diversions should have been been taken into consideration. Each diversion should be charged against the plaintiff as a cash item of the date when it occurred. The plaintiff's 11th exception of law which claimed that the evidence and the law demanded a finding in its favor for the entire amount sued for, was properly overruled. The 12th, 13th and 14th exceptions do not raise any additional question. The motion by the plaintiff to dismiss the exceptions of the defendants contains a number of technical grounds which were met by amendments allowed by the court which amendments were demurred to by the defendants. The amendments were allowable and the court did not err in overruling the demurrer to the amendments and the motion to dismiss. *Tippin* v. *Perry,* 122 *Ga.* 120 (10) 135 (50 S. E. 35). (f) The plaintiff also excepts to the ruling of the court in sustaining the defendants' two exceptions of law. The first of these exceptions alleged that the auditor erred in ruling out testimony as to a conversation preceding the signature of the contract of February 1, to the effect that the president of the plaintiff company was told by the county attorney that "the receipt would release the county of any indebtedness he might hold then or hereafter." This testimony would violate the rule against altering a written contract by parol, and the principle that negotiations and conversations prior to the execution of a writing are merged in it. The auditor rightly excluded this testimony and the court erred in sustaining the defendants' exception.

■ The second exception of law by the defendants related to that part of the contract of the county with the Taylor Company which provided that twenty convicts should be employed in the road work and that the county was to receive the pay for the use of the convicts. The auditor held this arrangement to be contrary to the law against hiring out or leasing convicts found in

Code of 1933, §§ 20-501, 77-207. The judge of the superior court reversed this ruling. If the contract was illegal, it does not follow that the plaintiff could take advantage of this illegality, having taken an acceptance from the county which said that payment was to be made only from such amounts as might be due the contractor "under the terms of employment" between him and the county. If the contractor himself were suing for the amount retained by the county for the hire of the convicts, he could not recover because of being in *pari delicto*. The plaintiff could not stand in any better position than the contractor. Consequently it is immaterial whether the provision for using convicts is legal or illegal. For the errors indicated a new trial is ordered.

*Judgment reversed. Sutton, J., concurs. Jenkins, P. J., disqualified.*

### ON MOTION FOR REHEARING.

It is contended by the movant, Greene County, in the motion for a rehearing in ground 1 thereof, that this court overlooked the statute requiring the auditor to brief the evidence. Code of 1933, § 10-201. The record does not show that a brief of the evidence was made by the auditor. His report says: "The evidence substantially briefed is submitted herewith." Dated July 4, 1933. There is in the record no brief certified by the auditor or appearing to have been filed with his report. Instead thereof, there is a brief agreed to by both parties to be correct, on February 2, 1934, approved by the trial judge as correct and ordered filed on February 3, 1934. References in the auditor's report to certain pages of the brief of evidence seem to refer to a brief made by him, but there is nothing in the record to show that he made the brief which was agreed on by the parties and approved by the trial judge seven months after the report was filed. Therefore the contention that the court overlooked the statute requiring the auditor to brief the evidence is without merit. Code of 1933, § 10-402, providing that the report of the auditor shall be taken as prima facie correct, can not have the effect of supplementing the brief of evidence. The brief is conclusive as to what evidence was introduced.

In ground 2 of the motion for rehearing it is alleged that the court overlooked a statement in the testimony of H. D. Goodwin, to the effect that "the payments shown on this ledger are correct." He did not testify that he kept the ledger, or otherwise disclose

the source of his knowledge that the payments were correct. He had previously testified to payments which were made to Bickers-Goodwin Company and to Greene County Motor Company or the Bank of Union Point. As to the payments made to his own company, he said: "I don't know how much money Bickers-Goodwin got out of the matter. I think they got something over $2000." The amount shown on the account was more than $3000. He also said he did not know about the transaction the bank and the motor company had about the truck, and he did not remember the amount charged Taylor for convict hire. Later he said, "The payments shown on this ledger are correct." Whether he was speaking about the payments he had previously testified about, or meant to say that all the payments shown on "this ledger" are correct, is not clear. In view of what the witness had said he did not know about items as to which he was specifically questioned, he was hardly qualified to testify absolutely that all of the fifty-eight items of disbursement were correct. The witness did not testify that the credit side of the account was correct. He spoke only of "payments," that is of alleged disbursements made by the county. Under the county's contract with Taylor Company, the latter was to be paid on estimates made by the State Highway Board. None of these estimates was introduced. The credit side of the account with Taylor Company was wholly without proof. It was merely a summary or memorandum made by a person unknown. The statement in the decision rendered, to the effect that the account was not verified, was correct.

The decisions cited in ground 3 are not in point. They relate to admissible books. The claim is made that the book in question was admissible, and that it is to be presumed that the necessary preliminary proof was made. Whether such a presumption would arise in connection with books declared by statute to be admissible under certain circumstances need not be considered. The book in this case was inadmissible, as it did not come within the statute. *Bass* v. *Gobert,* 113 *Ga.* 262 (38 S. E. 834) ; *Blanchard* v. *Johnson,* 142 *Ga.* 447 (83 S. E. 104). It was stated in the decision rendered that a book of this kind was no better than hearsay. It could have been said that it is hearsay. The section of the code dealing with the admission of books is in the part of the code which treats of hearsay evidence, and forms one of the exceptions to the rule against

hearsay. The book under discussion is not even secondary evidence, and the cases cited in the decision rendered, as to verdicts based on hearsay, are strictly in point.

There is no contradiction in rulings with regard to an order or acceptance not being binding on the county. The order of Eatonton Oil and Auto Company, because of becoming incorporated in the contract of February 1, was not held to be invalid. But the acceptances of the Bickers-Goodwin Company and Greene County Motor Company orders were held not binding on the county in accordance with the decisions of the Supreme Court in the *Bank of Cumming* case and in this case.

The request that this motion be heard by three judges can not be granted. Two judges are a quorum and can render a valid judgment. A demand should have been made for three judges before the case was submitted to the court for consideration. Had the case been argued, one of the judges would have disqualified and a demand could then have been made for a full bench. As the case was submitted without argument, counsel can not, after the rendition of a decision in which one judge was disqualified, demand, in a motion for a rehearing, a decision by a full bench.

In the motion it is alleged that counsel for the plaintiff in error did not raise any question as to proof of the account. In paragraph 3 of the reply brief for the plaintiff in error which was filed March 10, 1934, counsel distinctly raises the question that there was no testimony as to many of the charges on the account, that many of the items could not be classified as having priority over the plaintiff's claim, that the burden was on the defendant to show that all payments claimed as preference payments were such, and that the bare statement of their account with the contractor without further explanation does not carry this burden, etc. This fairly raises the question that the defendant did not establish its defense by sufficient evidence. However, it is not necessary that the party complaining of a verdict should have made the specific complaint that it was based on hearsay, in order to have it set aside. A general objection, such as that the verdict is unsupported by the evidence, gives the appellate court ground to set aside the verdict, if it is founded on hearsay. See decisions cited in the opinion.

When the case is retried, the defendant will have the opportunity to make legal proof of the disbursements made by the county for

the account of R. S. Taylor Company, and of the credits to which the Taylor Company is entitled.  *Rehearing denied.*